UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**DIANE JOHNSON**                                            **CASE NO. 5:22-CV-01423**

**VERSUS**                                                   **JUDGE DONALD E. WALTER**

**ROSEVIEW NURSING & REHABILITATION**   **MAG. JUDGE KAYLA D. MCCLUSKY**
**CENTER L.L.C. ET. AL.**

## REPORT AND RECOMMENDATION

Before the undersigned, on reference from the District Court, is a motion to remand [doc. #7]. The motion is opposed. [doc. #13]. For the following reasons, it is recommended that the motion to remand be GRANTED and the case be remanded to the First Judicial District Court, Parish of Caddo, State of Louisiana.

## Background

On April 27, 2022, Plaintiff Dianne Johnson, individually and on behalf of others similarly situated, filed a class action petition for damages and injunctive relief in the First Judicial District Court, Caddo Parish, State of Louisiana. [doc #1]. Therein, Plaintiff alleges that Defendants Roseview Nursing & Rehabilitation Center, LLC, and Central Management Company, LLC (collectively, "Defendants"), owned, operated, and managed Roseview Nursing & Rehabilitation Center in Shreveport, Louisiana. [doc #1-1, p. 2-3]. Plaintiff alleges that Defendants "failed to adequately fund and staff their facility" as required by the Louisiana Nursing Home Residents' Bill of Rights, which provides that a resident has a "right to receive adequate and appropriate health care and protective and support services." *Id.* at 2-4; LA. R.S. § 40:2010.8. Plaintiff also alleges that Defendants "did not devote sufficient resources to the proper operation of the skilled

nursing facility" and "did not devote sufficient financial resources to protect the health and safety of residents and ensure resident rights were not violated, most specifically, the right to dignity and adequate and appropriate health care and protective and support services . . . ." [doc #1-1, p. 4].

Plaintiff used a five-step methodology of determination to allege that Defendants failed to meet the "appropriate" facility staffing levels, based on information from expert opinions, professional recommendations on minimum staffing levels, the Center for Medicare & Medicaid Services ("CMS"), and "new research." *Id.* at p. 6. Plaintiff contends that, based on the aforementioned methodology, Defendants underfunded the facility—reporting an average per patient day ("PPD") of nursing hours to facility residents of .30, when a PPD of 1.25 was required. *Id.* Thus, Plaintiff alleges, there was a negative 76% variance between what Defendants provided and what was required. *Id.* at p. 6-7.

On May 27, 2022, Defendants removed this case to federal court based on federal question jurisdiction. [doc. #1]. Defendants allege that federal law "provides the substance" of Plaintiff's claims because the methodology of determination that Plaintiff used to determine the appropriate staffing levels is based on federal regulations and not state law. [doc. #13, p. 2]. Defendants further allege that Plaintiff's prayer for relief—which includes a demand for "any and all damages and relief" to which "Plaintiff and others similarly situated are entitled"—amounts to a *qui tam* claim, which is only actionable under federal law. *Id.* at 4.

On June 3, 2022, Plaintiff filed the instant motion to remand, arguing that she has not plead a federal cause of action and that her claims do not arise under federal law. [doc. #7].

Defendants filed their opposition on June 24, 2022. [doc #13].

Plaintiff filed her reply on July 5, 2022. [doc. #16]. Accordingly, the matter is ripe.

2

## Analysis

Under 28 U.S.C. § 1441(a), an action may be removed if the United States district courts have original jurisdiction over it. *Davis v. Dep't of Health & Hosps*., 195 Fed. App'x 203, 204 (5th Cir. 2006) (citing 28 U.S.C. § 1441(a); *Melder v. Allstate Corp*., 404 F.3d 328, 335 (5th Cir. 2005)). The propriety of removal is determined by looking to the plaintiff's complaint as it existed in state court at the time of removal. *Id.* (citing *Cavallini v. State Farm Mut. Auto Ins. Co*., 44 F.3d 256, 264 (5th Cir. 1995)).

Article III of the Constitution gives the federal courts power to hear cases "arising under" federal statutes. *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 807–08 (1986). Although the constitutional meaning of "arising under" may extend to all cases in which a federal question is "an ingredient" of the action, the Supreme Court has "long construed the statutory grant of federal-question jurisdiction as conferring a more limited power." *Id.* (citing *Osborn v. Bank of the United States,* 9 Wheat. 738, 823 (1824); *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 494–495 (1983)). "[A] case may arise under federal law 'where the vindication of a right under state law necessarily turned on some construction of federal law.'" *Id.* at 809 (citing *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 9 (1983)).

However, where the "law that creates the cause of action" is state law, original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is "really" one of federal law. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 13, (1983) (holding that the central issue presented turned on the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1982

3

ed. and Supp. III), but that federal jurisdiction nevertheless was lacking); *see also Gully v. First National Bank*, 299 U.S. 109, 112 (1936) ("[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[1]

It is not enough to confer federal question subject matter jurisdiction that a federal claim arises as an affirmative defense to a state created cause of action. *Id.* at 16 (citing 10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2767, at 744–45 (2d ed. 1983)) ("if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking."). Further, "[t]he fact that a substantial federal question is necessary to the resolution of a state-law claim is not sufficient to permit federal jurisdiction." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). *See also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) ("the presence of a disputed federal issue . . . [is] never necessarily dispositive."); *Merrell Dow Pharms. Inc.*, 478 U.S. at 813 ("[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.")

The Supreme Court has noted that "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Accordingly, federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue

---

[1] Although "the party who brings the suit is master to decide what law he will rely upon," a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint. *Franchise Tax Bd.*, 463 U.S. at 22 (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)).

is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities. *Singh*, 538 F.3d at 338.

The removing party "bears the burden of demonstrating that a federal question exists." *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007). "Any ambiguities are constructed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Here, the Defendants have not met their burden to show that the *Grable* test is satisfied.

### A. The Grable Test

**1. A federal issue is not necessarily raised.**

Defendants contend that a federal issue is necessarily raised because Plaintiff alleges a violation of federal law and seeks relief based on federal requirements. [doc. #13, p. 11]. Plaintiff, on the other hand, argues that the Louisiana Nursing Home Residents' Bill of Rights and Louisiana Department of Health regulations provide the authority to resolve Plaintiff's claims. [doc. #16, p. 2-3].

"For an embedded issue to be 'necessary' pursuant to *Grable*, the issue must be an essential element of [the] claim, such that [the plaintiff] could not succeed without it." *Cambre v. Riverlands Home Grp., LLC*, No. 22-1517, 2022 WL 2315018 at *3 (E.D. La, June 28, 2022) (quoting *Grable*, 545 U.S. at 314-15). "The federal issue is not 'necessary' if it is 'used merely as further evidence of the right to recover under state law.'" *Id.* (quoting *Till v. Unifirst Fed. Sav. & Loan Assoc.*, 653 F.2d 152, 155 n.2 (5th Cir. 1981)).

Here, Plaintiff is correct that a federal issue is not necessarily raised. The Louisiana Nursing Home Residents' Bill of Rights guarantees residents "the right to receive adequate and

5

appropriate health care . . . including services consistent with the resident care plan, with established and recognized practice standards within the community, and with rules promulgated by the Department of Health and Hospitals." LA. R.S. 40:2010.8(A)(7). The Department of Health and Hospitals requires facilities to have "sufficient nursing staff to provide nursing and related services that meet the needs of each resident. The nursing facility shall assure that each resident receives treatments, medications, diets, and other health services as prescribed and planned, all hours of each day." LA. ADMIN. CODE TIT. 48, § 9821(A). The Department of Health and Hospitals also requires facilities to staff a "sufficient number" of "registered nurses, licensed practical nurses, medication attendants certified, and certified nurse aides . . . 24 hours per day." LA. ADMIN. CODE tit. 48, § 9823(A).

Defendants point to La. Admin. Code tit. 48, Pt I, § 9823(A)(1)—which states that "at a minimum, the nursing facility shall provide 2.35 hours of care per patient per day"—to argue that Plaintiff's claims must rely on federal law[2] because Defendants' satisfy that standard. [doc. #13, p. 13-14]. In *Cambre*, the Court addressed an identical argument:

> The fact that Louisiana law specifies a "minimum" required number of nursing hours does not necessarily signify that all nursing hours above that minimum are "sufficient." Indeed, Louisiana regulations also state that a nursing facility shall provide "sufficient nursing staff to provide nursing and related services that meet the needs of each resident." La. Admin. Code tit. 48, pt. I, § 9821. That regulation likewise provides that the nursing facility "shall assure that each resident receives treatments, medications, diets and other health services as prescribed and planned, all hours of each day." *Id.* The defendants have offered no authority that compliance with the minimum requirement in Section 9823(A)(1) of the Louisiana Administrative Code also establishes compliance with Louisiana's other regulations. Cf. *MacRae v. HCR Manor Care Services*, No. 14-715, 2014 WL 12588464, at *5 (C.D. Cal. Oct. 30, 2014) (assessing similar California staffing regulations and finding that "[n]othing in the text of the regulations indicates that

---

[2] Like the Defendants in *Cambre*, Defendants here do not clearly identify the federal standard, law, or issue that they allege is necessary to Plaintiff's case. 2022 WL 2315018 at *4.

> if a nursing home fulfills the minimum level of ... nursing hours, it necessarily has 'an adequate number' of personnel").

2022 WL 2315018 at *4.

Here too, Defendants fail to offer authority to show that compliance with the minimum requirement of 2.35 hours of care per patient per day establishes compliance with the other relevant Louisiana regulations. Thus, even if Defendants did satisfy the minimum state standard, they still may have violated other state regulations, including La. Admin. Code tit. 48, § 9821(A) and La. Admin. Code tit. 48, § 9823(A). Accordingly, no federal issue is an essential element of the claim, such that Plaintiff cannot succeed without it, and, therefore, is not necessarily raised.

**2. The alleged federal issue is not actually disputed.**

Defendants also fail to show that there is an actually disputed federal issue. In their opposition, Defendants claim that the analysis that Plaintiff uses to determine the appropriate PPD is based on "a strained interpretation of the requirements of federal regulations, not state law." [doc #15, p. 3]. As the court in *Cambre v. Riverlands Home Grp.* noted, however, "[t]he defendants do not explain *which* federal issue is in dispute. Indeed, [the plaintiff] . . . does not identify any federal requirement that informed her [PPD] calculation." 2022 WL 2315018 at *4.

The same is true in this virtually identical case. In her complaint, Plaintiff noted that she used CMS data as part of calculations to determine the appropriate PPD. [doc. #1-1, p. 6]. However, the fact that Defendants dispute a calculation that relied in part on federal data is not enough to show that a federal **issue** is actually in dispute. Further, "'simply asserting that the subject matter of the suit implicates a federal regulatory scheme is insufficient to establish a relevant dispute of federal law.'" *Cambre,* 2022 WL 2315018 at *5 (quoting *Dinvaut v. Cambridge Energy Corp.*, No. 17-5630, 2017 WL 3484759, at *3 (E.D. La. Aug. 15, 2017)).

7

3. **The alleged federal issue is not substantial.**

Defendants also fail to show that the alleged federal issue is substantial. For a federal issue to give rise to federal jurisdiction, "it is not enough that the federal issue be significant to the particular parties in the immediate suit . . . [t]he substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Bd. of Commissioners of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 723–24 (5th Cir. 2017) (quoting *Gunn v. Minton*, 568 U.S. 251, 260 (2013)). The Supreme Court has suggested that an issue can be important in several instances, including: (1) where state adjudication would "undermine 'the development of a uniform body of [federal] law,'"[3] (2) where the case presents "a nearly pure issue of law" that would have applications to other federal cases;[4] or (3) when resolution of the issue has "broad[ ] significance" for the federal government.[5] Further, "[t]he absence of any federal cause of action . . . [is] worth some consideration in the assessment of substantiality." *Grable,* 545 U.S. at 318.

Defendants argue in their opposition that substantiality is demonstrated by "Plaintiff's express reliance on federal requirements to demonstrate both duty and breach, as well as the absence of an applicable state standard—which Plaintiff attempts to disguise." [doc. #13, p. 11]. This argument addresses only why the alleged federal issue is substantial to the parties in this

---

[3] *Gunn*, 568 U.S. at 260 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)).

[4] *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (internal quotation marks omitted).

[5] *Gunn*, 568 U.S. at 260.

suit—not the importance of the issue to the federal system as a whole. Accordingly, Defendants do not show that the alleged federal issue is substantial.

   4. **Federal jurisdiction may disturb the balance of federal and state judicial responsibilities.**

Finally, Defendants fail to show that federal jurisdiction will not disturb the balance of state and federal judicial responsibilities. *Cambre,* 2022 WL 2315018 at *5 (citing *Mitchell*, 28 F.4th at 588). "*Grable* imposes this requirement to avoid 'herald[ing] a potentially enormous shift of traditionally state cases into federal courts.'" *Id.* (quoting *Singh*, 538 F.3d at 340). "This prong is satisfied when the resolution of the federal issue has a small effect on 'the federal-state division of labor.'" *Id.*

Defendants argue in their opposition that the "deep and longstanding presence of the federal government" in nursing facility staffing as well as recent initiatives to "further federalize nursing home standards" means that federal jurisdiction over these claims would not "threaten the balance of federalism." [doc. #13, p. 11].

Defendants' argument, however, fails to address whether exercise of jurisdiction would disturb the division of labor between the state and federal judiciaries. Accordingly, Defendants fail to show that federal jurisdiction would not disturb the balance of federal and state judicial responsibilities.

Defendants have failed to meet their burden to satisfy any of the *Grable* factors. Thus, the Court does not have federal question jurisdiction.

9

### B. *The Alleged Qui Tam Action*

In her complaint, Plaintiff alleges that as a result of the Defendants' "knowing, intentional/fraudulent misrepresentations," Plaintiff and other residents were deprived of "76% of the nursing services promised such that the resulting damages total 76% of the amount of money paid to the [Defendants] . . . for care." [doc. #1-1 ¶ 13]. Defendants argue this is a *qui tam* claim. [doc. #13, p. 11-12]. Defendants contend that these allegations amount to "recoupment" damages and, because Louisiana law does not provide for "recoupment" damages, this claim can only be federal. [doc. #13, p. 12].

Plaintiff argues in her reply that the claim is not a *qui tam* action because Plaintiff is not bringing the action on behalf of the government seeking to recoup payments made by the government to defendants. [doc. #16, p. 7]. Instead, Plaintiff claims that she is seeking tort damages for fraudulent misrepresentations regarding the level of services Defendants would provide. *Id.* Plaintiff cites *Sun Drilling Prod. Corp. v. Rayborn*, No. 2000-1884, 798 So.2d 1141, 1152 (La. App. 4 Cir. 2001), holding that "a party injured by fraud and deceit of another has a cause of action for damages."

Plaintiff also argues that the well-plead complaint rule prohibits Defendants from recasting her allegations as a *qui tam* action. The undersigned agrees. "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharms. Inc.*, 478 U.S. at 809. A *qui tam* action is "a cause of action under the False Claims Act where a private person, called a 'relator' brings a claim on behalf of the government to impose civil liability against another person who 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval to the government.'" *Cambre*, 2022 WL 2315018 at *6 (quoting *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2019)).

10

Plaintiff is not bringing the claim on behalf of the government, nor does she allege that Defendants presented a false or fraudulent claim for payment to the government. Plaintiff's claims against Defendant are for tort damages based on a state law fraud claim. Accordingly, there is no *qui tam* action.

### C. Cost and Fees

Plaintiff alleged that Defendants lacked an objectively reasonable basis in removing this case to federal court, and, thus, they are entitled to costs and fees in bringing this motion to remand. Upon review of the parties' arguments and the record, the undersigned finds that the Defendants' removal was not unreasonable. Accordingly, the undersigned recommends that no costs or fees be awarded at this time.

### Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that Plaintiff's motion to remand [doc. # 7] be GRANTED and the case be remanded to the First Judicial District Court, Parish of Caddo, State of Louisiana.

IT IS FURTHER RECOMMENDED that Plaintiff's request for costs and fees be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE in Chambers on this 1st day of September, 2022.

                                                            Kayla D. McClusky
                                              United States Magistrate Judge